# GOODRICH v. MASSACHUSETTS MUTUAL LIFE INS. CO. et al.—240 S. W. (2d) 263.

Western Section.   January 11, 1951.

Petition for Certiorari denied by Supreme Court, May 12, 1951.

518

Ben C. Welch, of Memphis, for appellant.

R. G. Draper, D. C. Doten and James L. Hutter, Jr., all of Memphis, for defendants.

BAPTIST, J. This is the second trial and the second appeal in this case.

The facts necessary to a decision, the action of the Chancellor in the first trial, and the conclusion of this Court on the first appeal are set out in its opinion as follows:

"The complainant, Mrs. Edwin Langdon Goodrich, filed her bill in the Chancery Court of Shelby County seeking to recover the proceeds of an insurance policy on the life of Charles K. Goodrich, issued by the defendant, Massachusetts Mutual Life Insurance Company, in the amount of $5,000.00.

"From an adverse judgment there, she has appealed to this Court and assigned errors.

"The complainant and the said Charles K. Goodrich were married in 1922 and lived together as husband and wife in Memphis until some time in 1932. Marital differences arose between them and, on September 3, 1932, they entered into a settlement of their property rights by mutual consent. The pertinent parts of the agreement are as follows:

" 'The said C. K. Goodrich further agrees to pay the premiums upon and to continue in force a certain policy of insurance on his life, which said policy is in the sum of Five Thousand Dollars ($5000.00), and to keep said insurance in force in favor of the said Edwin L. Goodrich as beneficiary thereof. The said policy of insurance shall be kept in force in favor of the said Edwin L. Goodrich during the period that she shall remain separated from the said C. K. Goodrich and in the event that she obtains a divorce, during the period that she shall remain single thereafter.

" 'In the event that the said Edwin L. Goodrich shall remarry, then the monthly payments above provided for shall cease and said C. K. Goodrich shall have the right to change the beneficiary in the said policy of insurance to some other person.'

"On October 22, 1932, the complainant was granted a divorce from the said Charles K. Goodrich in the State of Nevada, the complainant and said Goodrich each being represented by counsel in the suit.

"Among other things the decree provides:

" 'It is further ordered, adjudged and decreed that the agreement made and entered into between the plaintiff and defendant on September 3, 1932, be and the same

is hereby by this court ratified, approved and the provisions thereof are hereby adopted by this court.'

"Immediately after this decree was entered, the said Charles K. Goodrich was married to another woman, who died.

"He was then married to the defendant, Melba B. Goodrich, and of this union was born Charles K. Goodrich, Jr., a minor, the said defendant being his regular guardian.

"At the time of the execution of the property settlement between the complainant and Charles K. Goodrich, the policy sued on was in force and was payable to the complainant, Edwin L. Goodrich as beneficiary.

"The property settlement was not filed with the defendant, Insurance Company, and the company had no knowledge thereof until this suit was brought.

"On August 9, 1946, upon the application of Charles K. Goodrich, the beneficiary in the policy was changed to Charles K. Goodrich, Jr., son of the insured.

"The number of the policy sued on is 951 898.

"The application of Charles K. Goodrich for the change of beneficiary in the above policy, and endorsed by the insurance company, shows that in four other policies, numbered 619 041, 943 175, 952 694 and 1 069 227, issued by the defendant, Insurance Company, the beneficiary in each policy was changed at the same time and made payable to Charles K. Goodrich, Jr. The application does not indicate who was the beneficiary in these other four policies or the amount of any of them.

"Upon the filing of the bill alleging that the complainant is entitled to the proceeds of the policy sued on, and the answer of the defendant guardian denying that complainant is entitled to the proceeds of the policy, the insurance company filed an answer and cross-bill in the

nature of a bill of interpleader admitting its liability under the policy. Among other things, it averred as follows:

" 'Said Edwin Langdon Goodrich remained unmarried at the time of the insured's death and so far as Cross-Complainant is aware, the policy of insurance here involved, which was in full force and effect at the time of the insured's death, is the only policy of insurance which he possessed on September 3, 1932, meeting the description contained in the separation agreement of that date.'

"No proof was taken in support of this averment.

"The only testimony taken was that of the complainant.

"She testified that she never had the insurance policy sued on in her possession; that her husband had other insurance policies at the time of their separation; that she did not know what they were, but he had some more insurance policies; that she had never seen the policy in question; that he had policies in the Massachusetts and Travelers; that several of the policies were made out to her; that nothing was said as to any particular $5,000.00 policy in which she was the beneficiary; that she never gave the Massachusetts Mutual Insurance Company any notice that she claimed any policy; that she knew her husband had a policy for her.

"At the conclusion of the complainant's testimony, the defendant, Melba B. Goodrich, moved the Court to withdraw the issues from the jury and enter a decree in favor of the defendant in the case.

"This motion was sustained and thereupon a decree was entered in favor of the defendant, Mrs. Melba B. Goodrich, guardian of Charles K. Goodrich, Jr., for the amount of said policy; and a decree against the Mas-

sachusetts Mutual Life Insurance Company on its bill of interpleader, requiring it to comply with the provisions of the policy in its payments to the guardian of Charles K. Goodrich, Jr.

"The decree is based upon the opinion of the Chancellor that the particular policy with the defendant, Insurance Company, of $5,000.00 was not identified either by the original contract or by the divorce settlement between Mrs. Edwin L. Goodrich and her husband, and, therefore, as a matter of law, the most favorable view that can be taken for the complainant in the lawsuit is that she had a contract between herself and her husband which obligated him to keep in force a $5,000.00 life insurance policy for her benefit and that he breached the contract and that her remedy would be a suit against the estate for benefits under the contract.

"In a consideration of the defendant's motion to withdraw the issues from the jury and enter a decree in her favor, it was the duty of the Chancellor, and it is the duty of this Court, to take that view of the evidence most favorable to the complainant's case, and, if there is any doubt as to the conclusion to be drawn from the whole evidence, the motion must be denied.

"The complainant contends that 'all of the facts and circumstances herein are certainly sufficient to bring about a conclusion in which the minds of reasonable men would, or might, differ as to whether the policy of insurance in the record is or is not the insurance policy that the parties to the property settlement agreement had in mind upon the execution of the same'.

"The question is whether there are such facts and circumstances in the record tending to show such intention and therefore make an issue to be submitted to the jury.

"As stated, the Chancellor's conclusion was based upon the fact that the policy sued on was not identified in the marriage settlement contract nor in the divorce decree; therefore, there was no issue to be submitted to the jury.

"In determination of the complainant's assignment of error on this action, we think it well to call attention to the rule of law long since laid down by the Supreme Court of this State that there is no power in the trial court to direct a verdict, or withdraw the issues from a jury where there is a dispute as to any material or determinative evidence, or any doubt as to the conclusion to be drawn from the whole evidence upon the issues to be tried.

"The contention of the complainant is that there are material facts and circumstances tending to show that the intention of Charles K. Goodrich was to carry out his contract 'to pay the premiums on and to continue in force a certain policy of insurance on his life, which said policy is in the sum of $5,000.00, and to keep said insurance in force in favor of said Edwin L. Goodrich', by continuing in force the policy sued on.

"The policy in question, as originally issued, provided that it should be paid to 'Edwin L. Goodrich, the insured's wife', as beneficiary in monthly installments of $50.00.

"The marriage settlement contract was dated September 3, 1932, and the decree of divorce, October 22, 1932.

"Thereafter, on November 21, 1932, an amendment was entered on the face of the policy sued on at the request of the insured as follows:

" 'If this policy shall mature as a death claim, the proceeds shall be paid in one sum to Edwin L. Goodrich, wife of the insured, if living, otherwise to the executors

or administrators of the insured, a legal request therefor having been received.'

"And then on December 12, 1932, another amendment was entered on the face of this policy at the request of the insured as follows:

" 'This company hereby acknowledges receipt of notice from the insured that the correct relationship to him of Edwin L. Goodrich, the beneficiary hereunder, is "former wife".'

"Goodrich had agreed to continue in force a certain policy of insurance on his life in the sum of $5,000.00 in favor of the complainant as beneficiary. He kept the policy sued on in force in favor of the complainant as beneficiary from the dates of the amendments until August 9, 1946, when he undertook to change the beneficiary.

"We think this evidence of the changes in the policy, at the request of the insured, and the fact that for twelve years the insured kept the policy in force in favor of the complainant, as his former wife, is material evidence as tending to show the purpose and intention of the insured to identify the policy sued on as the one referred to in the settlement agreement.

"As stated, the Chancellor was of the opinion that the policy, not being identified in the contract or divorce decree, as a matter of law, the complainant was not entitled to a recovery upon the policy.

"In view of the other facts and circumstances in the case, we are of the opinion that the minds of reasonable men may differ as to whether or not Goodrich intended that the policy sued on was the policy mentioned in the settlement agreement and, therefore, an issue for the jury was made on that question.

"The complainant's assignment of error on that question is sustained.

"In view of this conclusion, it is unnecessary to consider the complainant's other assignments of error.

"The decree of the Chancery Court is reversed and the cause remanded for a new trial."

The defendant's petition for a writ of certiorari was denied by the Supreme Court.

On the remand, the following issue prepared by the Chancellor was submitted to the jury:

"Was it the intention of Charles K. Goodrich, deceased, to identify Massachusetts Mutual Life Insurance Company Policy No. 951898 as the $5,000.00 policy on his life, referred to in his contract of September 3, 1932, with Complainant, Mrs. Edwin Langdon Goodrich."

The answer of the jury to this question was "Yes".

The defendants' motion to set aside the findings of the jury and grant a new trial was overruled, the Chancellor being of the opinion there was evidence to support the verdict and therefore approved it.

The defendants' motion for a decree non obstante veredicto was granted and a decree rendered in favor of the defendants, from which action the complainant has appealed to this Court and assigned errors.

The Chancellor's action is based upon the following findings set out in the decree:

"1. That upon any theory favorable to complainant, the estate of Charles K. Goodrich is a necessary and indispensable party to this cause, and it is not a party and no attempt has ever been made to make it a party, although it appears that said estate was open when the original bill herein was filed, and was at that time and remained solvent; and it further appearing to the Court that any cause of action which the complainant might

have by reason of the breach of the property settlement agreement as alleged by her was a cause of action for a breach of contract to be prosecuted against the estate, or the personal representatives, and not against the defendants to this cause; and it further appearing to the Court

"2. That there appears a fatal variance between the pleadings and the proof in this cause in that the complainant in her pleadings avers a change in beneficiary in the insurance policy in question from Edwin Langdon Goodrich to Charles K. Goodrich, Jr., whereas the proof shows that the change of beneficiary was from Edwin Langdon Goodrich to Melba Dryden Goodrich and then to Charles K. Goodrich, Jr.; it further appearing to the court

"3. That the change in beneficiary from Edwin Langdon Goodrich to Melba Dryden Goodrich was made for a valuable consideration, to-wit, the promise of Charles K. Goodrich to Melba D. Goodrich that if she would not divorce him, he would leave all of his insurance to her, and the fact that she never did divorce him; that the existence of this consideration, together with other evidence, facts and circumstances in the record, including a finding by the Court that Melba Dryden Goodrich had no knowledge of the existence or provisions of the property settlement agreement, dated September 3, 1932, prior to the filing of the original bill in this cause, which occurred after the death of Charles K. Goodrich, placed Melba Dryden Goodrich in the position of a bona fide purchaser for value without notice, and that her position as such cut off any equities which the complainant, Edwin Langdon Goodrich, might or could have had; the Court finds that the whole transaction in so far as Melba

Dryden Goodrich was concerned, was characterized by good faith; and it further appearing to the Court

"4. That the breach of contract by Charles K. Goodrich, long prior to his death, with reference to the monthly payments he had agreed to make to Edwin Langdon Goodrich, which breach was known to the said Edwin Langdon Goodrich, was sufficient to and did charge the said Edwin Langdon Goodrich with notice that the said Charles K. Goodrich might and probably would breach his contract in other respects; that this notice to Edwin Langdon Goodrich occurred long before the change in beneficiary to Melba Dryden Goodrich; and that Edwin Langdon Goodrich failed to assert any claims she might care to make against this insurance policy at a prior time when she had knowledge of them, or if she had no knewledge of them, that her failure to acquire such knowledge seasonably was the result of her own culpable negligence; and the Court finds the complainant, Edwin Langdon Goodrich, guilty of gross laches."

The complainant's assignments of error are upon these findings and the action of the Chancellor thereon.

██ We are of the opinion that the only material issue of fact in this case was properly submitted to the jury by the Chancellor. The jury's affirmative answer to that issue and its approval by the Chancellor settles that question in favor of the complainant.

The only remaining question is whether or not Charles K. Goodrich had any legal or equitable right to change the beneficiary, after entering into the property settlement with the complainant, and after the final decree of divorce was entered which embodied this property settlement.

We are constrained to answer this question in the negative.

The policy in question contained this provision: "Subject to the rights of any assignee, the insured may, in accordance with any right reserved in the application for this policy, or amendments thereto, successively change the beneficiary hereunder; provided any such change shall become operative only when endorsed upon the policy at the Company's Home Office pursuant to such form of request as the Company may require."

■ It is true that where the right to change the beneficiary has been reserved to the insured by the terms of the insurance policy, the beneficiary named in the policy has a mere expectancy, and has no vested right or interest during the life time of the assured. Page v. Detroit Life Insurance Co., 11 Tenn. App. 417, at page 424, and cases therein cited.

■ However, in this case the divorce decree specifically provides that the agreement made by the parties on September 3, 1932, was by the court ratified, approved and its provisions adopted by the court. These provisions thus became a part of the decree providing "that said policy of insurance shall be kept in force in favor of said Edwin L. Goodrich during the period that she shall remain separated from the said C. K. Goodrich and in the event that she obtains a divorce during the period that she shall remain single thereafter".

The insurance company was not a party in the divorce proceeding and hence it was not bound by the change. But the insurance company is making no question about it, as between the parties, that is between Edwin L. Goodrich and Charles K. Goodrich, both of whom were parties to the divorce suit, neither can be heard to dispute the decree or its legal effect. This upon the principle of estoppel by judgment, if not otherwise.

■ The effect of this decree is more than a mere assignment by the insured of his right to change the beneficiary. It was a judicial determination that the insured should have the right to change the beneficiary only in the event that Edwin L. Goodrich should remarry.

We think the legal consequence of this decree was to give Edwin L. Goodrich a vested interest in the proceeds of the policy, subject to be divested only by a rightful change of the beneficiary by the insured, and this could be done only in the event the wife should remarry.

In this view of the case, it cannot be doubted that an attempt by the insured to change the beneficiary without the joinder of the beneficiary cannot affect the rights of the latter. 29 Am. Jur. p. 402, Sec. 493; p. 986, Sec. 1316; Page v. Detroit Life Ins. Co., 11 Tenn. App. 417.

■ The following statement in 29 Am. Jur., Sec. 1314 is fully applicable to the case at bar:

"Equities may arise in favor of the beneficiary in a life insurance policy which will deny the insured the right to change the beneficiary, as, for example, the insured, for a valuable consideration, estops himself from changing his designation of the beneficiary."

■ There could hardly be a stronger case for the application of this rule than the case under consideration. Certainly if the insured himself were alive in a contest between him and the former wife, he could not be heard to say that he had either assigned the policy or changed the beneficiary. And, his privies can stand on no higher ground than he does. This is true because the rights of both an assignee and a beneficiary are derivatives. Horton v. Employers, etc., Corp., 179 Tenn. 220, 164 S. W. (2d) 1016; and Hartford Accident & Indem. Co. v. Partridge, 183 Tenn. 310, 192 S. W. (2d) 701.

The complainant has cited the case of Mutual Life Insurance Company of New York v. Franck, 9 Cal. App. (2d) 528, 50 P. (2d) 480, 481, as follows:

"Albert J. Franck and the respondent Coral La Fontaine Franck were married July 13, 1917. They established their home in Nevada. Two fifteen-year endowment life insurance policies numbered 2658767 and 2658771, respectively, for the sum of $5,000 each were issued to him October 22, 1919. The annual premium on each policy was the sum of $348.80. His wife Coral was named as beneficiary in each of these policies. During their married life the premiums thereon were paid from their community property. In 1921 domestic trouble arose between them on account of which they executed an agreement settling their property rights by the terms of which he promised to pay his wife in the event of a divorce the sum of $250 per month as alimony and covenanted to make her the sole, irrevocable beneficiary of the policies above mentioned. The policies were then delivered to the respondent. These covenants were conditioned upon her remaining unmarried. The respondent never remarried.

"February 14, 1921, upon proceedings duly had in the district court of Nevada decree of divorce was rendered by that court in favor of the respondent in which she was awarded $250 per month alimony, together with title to the proceeds of both insurance policies. This decree directed that Albert J. Franck should constitute his wife sole, irrevocable beneficiary of both policies and pay all premiums thereon. This divorce became final July 5, 1923, without the knowledge or consent of the respondent, contrary to the provisions of the agreement settling their property rights and in violation of the decree of divorce, Mr. Franck purported to change these policies so as to

constitute his executors, administrators and assigns the beneficiaries thereof.

. . . . . .

"June 14, 1924, Albert J. Franck and Beulah Wheeler, this appellant, were married. November 26, 1926, without the knowledge or consent of the respondent, Coral Franck, the insured purported to change the beneficiary of these policies contrary to the terms of the agreement settling property rights and of the decree of divorce and designated this appellant as beneficiary thereof. The insured wrongfully procured policies and delivered them to the appellant . . . and the respondent thereupon demanded of the plaintiff insurance company the proceeds due under the terms of these policies. The Mutual Life Insurance Company of New York then commenced this action against the respondent and the appellant paying into court the proceeds of the policies and asking the court to determine their respective rights thereto and that plaintiff be discharged from further liability under the contracts. . . .

. . . . . .

" 'That on or about . . . February 14th, 1921, this cross-complainant and Albert J. Franck entered into a property settlement by the terms of which, among other things, it was agreed that said Albert J. Franck was to constitute and make this cross-complainant an irrevocable, sole beneficiary under said policies of insurance and that it was further agreed that this cross-complainant as of that date would have a vested and definite right and interest in and to said policies of insurance and that at no time would said Albert J. Franck cause any change to be made in the beneficiary in any of the policies; that this cross-complainant relied and depended upon said

property settlement and agreement and that she was to be the irrevocable, sole beneficiary in said policies and surrendered valuable property rights to said Albert J. Franck because of such reliance.'

". . . It has been determined that while a named beneficiary of a policy which provides for a change therof by the insured, secures only a contingent interest therein, a subsequent agreement of the insured in consideration of a settlement of property rights in contemplation of a divorce by the terms of which he covenants to make her sole, irrevocable beneficiary of the policy, vests her with an equitable interest therein which may not be defeated without her consent. Shoudy v. Shoudy, 55 Cal. App. 344, 352, 203 P. 433; McEwen v. New York Life Ins. Co., 42 Cal. App. 133, 141, 183 P. 373. The facts of the Shoudy Case were very similar to those which appear in this proceeding, except that the decree of divorce did not direct that the wife should be made the irrevocable beneficiary. The insurance policy was not mentioned in the Shoudy decree. It appears in that case that, pending the divorce proceedings, the insured wrote a letter to his sister saying: 'Referring to our conversation settlement between Mrs. Shoudy and myself you are at liberty to say to her. . . . She will have an alimony as long as Ruth is with her of $125.00 per month. . . . I have a policy in the Banker's Life Association, $4,000.00, which I will keep in effect for her as long as she remains single.' It does not appear that the decree approved or adopted this agreement. But the decree awarded the wife alimony upon the same terms stipulated in the agreement and failed to mention the policy or the contract to make her the irrevocable beneficiary thereof. After the divorce was granted, Mr. Shoudy wrote to the insurance company saying. 'This is to advise that we have just

been divorced a few days ago, and I agreed to keep these (policies) in force for her until she may remarry.' The company notified him that there was no necessity for a change in the policy. Regarding the effect of the property settlement agreement in that case, the court said:

" 'When Dexter Shoudy, in anticipation of the divorce between himself and his wife, offered as one of the terms of settlement of their property rights "to keep in effect for her as long as she remained single" said policies, and when this offer was accepted by her the quality of her interest as a beneficiary in said policies became changed from that of a mere expectancy to a more fixed and permanent relation. She had thenceforth an equitable interest in said policies of which she could not be divested by the mere act of the insured in changing the name of the beneficiary.'

"The Court, in these opinions, further held that:

" 'The [property settlement] contract itself was sufficient to irrevocably vest the beneficiary with interest in the policies.' "

The Chancellor has reached his conclusion upon a holding that the estate of Charles K. Goodrich is a necessary party to this suit, the only remedy of the complainant being a suit for breach of contract to be prosecuted against the estate.

We do not agree with this conclusion. The suit was properly brought upon the insurance policy. As heretofore stated, the decree in the divorce case gave the complainant a vested right in the policy, as between her and the insured. In violation of the agreement and of the decree, the insured has fraudulently attempted to deprive her of the proceeds of the policy by an attempted change of beneficiary. Equity will intervene in such case and declare her beneficiary in the policy.

█ The Chancellor further held that there is a fatal variance between the pleadings and the proof. This holding is based upon the proposition that the bill alleges that there was a change of beneficiary from Edwin Langdon Goodrich to Charles K. Goodrich, Jr., whereas at one time Charles K. Goodrich attempted to change the beneficiary from Edwin Langdon Goodrich to Melba Dryden Goodrich and then to Charles K. Goodrich, Jr. Melba Dryden Goodrich is not a party to the suit and there is no contention that she has any interest in the proceeds of this policy. Such an averment would have been surplusage.

█ The Chancellor further held that the attempted change in beneficiary from Edwin Langdon Goodrich to Melba Dryden Goodrich was made for a valuable consideration and as such cut off any equities which the complainant had. We repeat that Melba Dryden Goodrich is not a party to this suit and makes no contention of any interest in the proceeds of this policy, therefore any transaction between her and the insured is immaterial.

█ Furthermore, if she was a party or claimed the proceeds of the policy, under any agreement with the insured, her testimony would be immaterial for the reason that she states the agreement was to leave the policy not to her but to Charles K. Goodrich, Jr.

Quoting:

''Q. State whether he offered you any inducement or made any promise if you did not get a divorce?

''A. Well he promised to leave all the insurance to me but the $5,000 policy for the child.''

█ █ The Chancellor further held that the complainant is guilty of gross laches, that the failure of Charles K. Goodrich to comply with the contract as to

monthly payments put her on notice, that he might breach his contract with reference to the insurance policy.

In equity, laches does not consist of delay, unless such delay works to the disadvantage or injury of another. The rule cannot be invoked in this case as any delay on the part of the complainant has not worked to the disadvantage of the defendant.

The proceeds of the policy here involved are in the registry of the Chancery Court for disposition, amounting to $4668.20.

We think the right of the complainant to the proceeds of the policy is clearly established.

For these reasons, the assignments of error are sustained and the decree of the Chancery Court reversed.

A decree will be entered here in favor of the complainant, Edwin Langdon Goodrich, in the amount of $4,668.20, and which the Clerk and Master is directed to pay to the complainant.

The defendant will pay the costs.

Anderson, P. J., and Swepston, J., concur.