IN THE COURT OF APPEALS OF TENNESSEE

EASTERN SECTION AT KNOXVILLE

FILED

October 20, 1995

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| ESTATE OF LOWELL KENNETH REED, DECEASED. | ) | BLOUNT PROBATE |
| | ) | |
| GINGER REED and DAVID REED, | ) | |
| | ) | |
| Claimants/Appellees, | ) | |
| v. | ) | NO. 03A01-9507-PB-00230 |
| | ) | |
| ROSIE LEE CLARK REED, | ) | |
| | ) | |
| Executrix/Appellant. | ) | AFFIRMED. |

Duncan V. Crawford, Maryville, For the Appellant.

Robert N. Goddard, Maryville, for the Appellees.


**O P I N I O N**


            INMAN, Senior Judge


Lowell Kenneth Reed and Carolyn Margaret W. Reed were divorced in 1978.

The judgment incorporated a Property Settlement Agreement which, as pertinent

here, included this provision:

> (7) The Party of the Second Part agrees to pay to the Party of the First Part as alimony, pending the sale of the home as reflected in Paragraph (1), located at 1206 Lenore Lane, Maryville, Tennessee, 37801, One Hundred Sixty-six Dollars and 29/100 ($166.29), said payments due and payable after entry of the Final Decree on the 5th of each and every month thereafter until said home is sold.
>
> Upon the sale of the house, the Party of the Second Part agrees to pay as alimony to the Party of the First Part an amount commensurate with the comfortable living of the Party of the First Part for the remainder of her life or until she remarries. It is contemplated between the parties that this is to include rent or mortgage payment, utilities and phone expense. In addition thereto, the Party of the Second Part, recognizing that the Part [sic] of the First Part has foregone her education in order to further the Party of the Second Part, expressly agrees to pay all expenses for the Party of the First Part to attend a college of her choice until she obtains an undergraduate degree, equivalent to a B.S. or a B.A., said expenses to include, without limitation, tuition, books, room and board and subsistence allowance not exceeding One Hundred

Dollars ($100) per month. In the event the Party of the First Part is employed, full time or part time, while working towards her undergraduate degree, the Party of the Second Part will reduce the subsistence allowance commensurate with the income of the Party of the First Part. It is agreed to by the Party of the Second Part that any and all life insurance policies obtained by the Party of the Second Part through any source, as of the date of filing the Complaint for Absolute Divorce, September 8, 1978, shall be maintained in full force and effect, without any encumbrances thereon, and the premium shall be maintained by the Party of the Second Part. It is further agreed that the designated beneficiaries as of said date, September 8, 1978, shall remain as of said date, unless and until the Party of the First Part remarries, then, in such event, the Party of the First Part shall be removed as designated beneficiary on said insurance policies and substituted thereon shall be the children on the parties, each to share equally.

There was in effect on September 8, 1978, a policy of insurance on the life of Lowell Reed. His wife, Carolyn Margaret Reed, was the principal beneficiary. Their three children were secondary beneficiaries. In 1984 Margaret Reed remarried which terminated her right as principal beneficiary; however, on January 25, 1989, the insured changed the beneficiaries to "Carolyn M. Reed, former spouse, with all children, including adopted, as secondary beneficiaries." In 1991 the insured remarried and on January 31, 1992 changed the beneficiaries of his life insurance policy to his second wife and oldest son.

The insured was killed in a traffic accident on June 27, 1993. The policy remained in effect and afforded coverage of $160,000.00 which was paid on September 8, 1993 to Rosie Clark Reed, the surviving widow, and Bobby Reed, the oldest son, in accordance with the policy.

In proper course the will of Lowell Kenneth Reed was duly probated, and on January 20, 1994, Ginger Reed and David Reed, the other two children, filed a claim against the estate for the proceeds of the insurance policy, or alternatively, for a judgment against the estate.

The executrix, who is the surviving spouse of Lowell Reed, excepted to the claim on the ground that the policy of insurance was intended only as an alternative source of funds for the payment of alimony and child support, both of which had long ceased to be an obligation of the insured, and that the enforcement of the contractual provision would be unconscionable and against public policy. Following a hearing the claim was sustained, and a judgment was entered against the

2

executrix for $107,840.00, representing two-thirds of the proceeds of the policy.

The executrix appeals, presenting for review the following issues, *in haec verba:*

> "Specifically, when a divorce decree requires an ex-husband to maintain a term life insurance policy on his life and to designate his children as beneficiaries thereon:
>
>> A. Is such a provision in the nature of a child support obligation and/or security for a child support obligation?
>>
>> B. When the decree contains no termination of this life insurance provision, does the provision terminate upon the cessation of the ex-husband's child support obligations and/or should a court of equity provide a reasonable termination time?
>>
>> C. When the decree contains no termination of this life insurance provision, and when the obligation under this provision would continue indefinitely in favor of adult children for whom the ex-husband no longer has any duty of support, should a court refuse to enforce the provision?"

The executrix argues that the quoted provision in the divorce judgment, when considered in its entirety, intended only to require the defendant husband to insure the support of his children during their minority in the event of his earlier death. If read literally, she argues, the obligation to provide life insurance continued for the remainder of the life of the defendant for the benefit of adult children, an unreasonable and unintended result. We cannot agree.

What the appellant overlooks is the contractual nature of the obligation. It is couched in the clearest of language, and provides that if the wife remarries she ceases to be a beneficiary and the children of the parties will be substituted as beneficiaries. This contractual obligation is binding. *Penland v. Penland,* 521 S.W.2d 222 (Tenn. 1975); *Wendell v. Sovran Bank,* 780 S.W.2d 372 (Tenn. Ct. App. 1982). The agreement of the defendant husband, now the deceased, approved by the trial judge, is a clear and unambiguous contractual obligation which cannot be construed as merely security for the child support obligation. See *Goodrich v. Mass. Mutual,* 240 S.W.2d 263 (Tenn. Ct. App. 1951). The courts are bound to enforce the plainly expressed agreement of the parties.

Our review is *de novo* on the record, with no presumption of correctness. *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87 (Tenn. 1993). We agree with the conclusion of the Probate Court and affirm the judgment with costs assessed to the

appellant.

_____
William H. Inman, Senior Judge

CONCUR:


_____
Don T. McMurray, Judge


_____
Charles D. Susano, Jr., Judge